## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| YANTAI ORIENTIAL PROTEIN TECH CO., LTD. YANTAI ZHONGZHEN TRADING CO., LTD, JIUJIANG TIANTAI FOOD CO., LTD., and YANTAI YIYUAN BIOENGINEERING CO., LTD., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Court No. 24-00181 |

## COMPLAINT

Plaintiffs Yantai Oriental Protein Tech Co., Ltd. ("Yantai Oriental), Yantai Zhongzhen Trading Co., Ltd. ("Zhongzhen"), Jiujiang Tiantai Food Co., Ltd., and Yantai Yiyuan Bioengineering Co., Ltd., which are affiliated companies, by and through undersigned counsel, hereby file this Complaint and state as follows:

## ADMINISTRATIVE DECISION TO BE REVIEWED

1. Plaintiffs seek review of the final determination of the U.S. Department of Commerce, International Trade Administration's ("Commerce") less-than-fair value ("LTFV") investigation of pea protein from the People's Republic of China ("China"), which was published as *Certain Pea Protein from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Critical Circumstances Determination*, 89 Fed. Reg. 55,559 (July 5, 2024) ("*Final Determination*"), accompanying Issues and Decision ("I&D") Memorandum, that became effective upon publication of *Certain Pea Protein from the People's Republic of China: Antidumping and Countervailing Duty Orders*, 89 Fed. Reg. 58,390 (Aug. 26, 2024) ("*Orders*").

## JURISDICTION

2. This action is filed pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II), 1516a(a)(2)(B)(i), and 28 U.S.C. § 1581(c). This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

## STANDING OF PLAINTIFFS

3. Plaintiffs participated in Commerce's LTFV investigation of pea protein from China that resulted in the challenged *Final Determination*, submitting questionnaire responses, surrogate value ("SV") data, and briefing, *inter alia*. Plaintiffs are thereby interested parties as described in Section 771(9)(A) of the Tariff Act of 1930, as amended (the "Act"), 19 U.S.C. § 1677(9)(A), and thus have standing to bring this action under 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516(d).

## TIMELINESS OF THE ACTION

4. Section 1516a(a)(2)(A)(i)(II) of the Act requires that, in actions challenging Commerce's determinations pursuant to section 1516A(a)(2)(B)(i) regarding LTFV investigations, the Summons must be filed within 30 days of the date of publication in the Federal Register of the *Orders*. 19 U.S.C. § 1516a(a)(2)(A)(i). Commerce published the *Orders* on August 26, 2024.

5. This action was commenced within 30 days of the date of publication of the *Orders* through the filing of a Summons on September 25, 2024. This Complaint is being filed on October 25, 2024, within the time allowed for the filing of a Complaint by statute and this Court's Rules. The Summons and the Complaint have both therefore been timely filed in accordance with 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 263(c), and pursuant to Rules 3(a)(2) and 6(a) of this Court.

## BACKGROUND

6. On July 12, 2023, PURIS Proteins, LLC ("Petitioner") filed a petition with Commerce and the U.S. International Trade Commission ("ITC") claiming in part that pea protein from

China was being sold to the United States at LTFV.

7.     On August 1, 2023, based on the allegations in the petition, Commerce initiated a LTFV investigation of pea protein from China. *See Certain Pea Protein from the People's Republic of China: Initiation of Less-Than-Fair-Value Investigation*, 88 Fed. Reg. 52,124 (Aug. 7, 2023).

8.     On August 22, 2023, Plaintiffs timely filed quantity and value questionnaire responses for use by Commerce in selecting mandatory respondents. On August 28, 2023, Commerce selected Zhongzhen as a mandatory respondent. Zhongzhen provided Commerce with extensive corporate, sales, and cost information in responding to the antidumping duty ("ADD") questionnaire. Zhongzhen, on October 2, 2023, timely responded to Section A of Commerce's ADD questionnaire. Zhongzhen, on October 24, 2023, timely responded to Sections C and D of Commerce's ADD questionnaire.

9.     Plaintiffs throughout the LTFV investigation provided Commerce with extensive surrogate value ("SV") data and information for purposes of calculating normal value, given that China is a designated nonmarket economy. Plaintiffs timely filed: comments on Commerce's surrogate country list on November 3, 2023; comments on the appropriate surrogate country on November 8, 2023; initial SV data on November 17, 2023; SV rebuttal data on December 3, 2023; and final SV data on January 8, 2024.

10.    On September 13, 2023, Yantai Oriental timely filed its separate rate application ("SRA"). On December 14, 2023, Commerce identified areas in Yantai Oriental's SRA that required clarification and issued an SRA supplemental questionnaire. On December 21, 2023, Plaintiffs timely submitted a response to Commerce's SRA supplemental questionnaire.

11.    On November 13, 2023, Petitioner filed a critical circumstances allegation with respect to imports of pea protein. Plaintiffs throughout the investigation timely submitted their quantity and

value data, as requested by Commerce for use in Commerce's critical circumstances analysis.

12. Zhongzhen provided extensive responses to Commerce's supplemental ADD questionnaires. Zhongzhen timely filed its: supplemental Section A response on December 21, 2023; supplemental Section C response on January 11, 2024, and supplemental Section D response on January 16, 2024.

13. On February 13, 2024, Commerce published its preliminary determination in its LTFV investigation of pea protein from China. *Certain Pea Protein from the People's Republic of China: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Affirmative Determination of Critical Circumstances, Postponement of Final Determination, and Extension of Provisional Measures*, 89 Fed. Reg. 10,038 (Feb. 13, 2024) ("*Preliminary Determination*"), and accompanying Decision Memorandum.

14. Commerce preliminarily "collapsed" Plaintiffs by treating them as a single entity. U.S. Department of Commerce Memorandum (Feb. 7, 2024).

15. Commerce preliminarily declined to calculate a dumping margin for Plaintiffs, by finding them ineligible for a separate rate and instead treating them as part of the China-wide entity. U.S. Department of Commerce Memorandum (Feb. 7, 2024). Commerce did not find that the Chinese government had ownership over Plaintiffs or specifically controlled their export activities. Rather, Commerce made its separate rate ineligibility finding based on the fact that one Zhongzhen corporate official was a member of a local People's Congress, and another was a member of the Chinese People's Political Consultative Conference of Zhaoyuan City ("CPPCC"). As a result of this separate rate denial, Commerce preliminarily assigned Plaintiffs a 280.31% dumping rate as part of the China-wide entity and cancelled the verification of Plaintiffs' questionnaire responses that it had intended to conduct.

4

16.     Commerce preliminary made an affirmative critical circumstances determination for Plaintiffs, relying on adverse facts available ("AFA") as a result of the separate rate denial, rather than relying on the quantity and value data provided by Plaintiffs for purposes of the critical circumstances analysis. U.S. Department of Commerce Memorandum (Feb. 7, 2024).

17.     Plaintiffs on February 12, 2024, filed a letter with Commerce requesting reconsideration of its determinations to: (1) deny Plaintiffs' separate rate; and (2) cancel verification. Commerce did not respond to this request.

18.     Plaintiffs timely filed an administrative case brief on March 21, 2024, challenging Commerce's preliminary separate rate denial. Plaintiffs, *inter alia*, demonstrated that:
(1) Commerce did not and could not show Chinese government control of Zhongzhen's export activities; (2) the local People's Congress and CPPCC are not government agencies;
(3) members in these organizations do not become government officials; (4) Zhongzhen corporate officials' memberships in the local People's Congress and CPPCC did not provide a basis for separate rate denial, and in fact contradicted longstanding agency practice affirmed by this Court; (5) Zhongzhen has no government ownership whatsoever, and its ownership structure precludes a finding of government control; (6) Commerce deviated from its decades-long agency practice by narrowly focusing on potential government control through the membership of two officials despite no state ownership, rather than the totality of the record to assess a nexus between the Chinese government and export activities; (7) application of Commerce's four factor *de facto* analysis confirmed Zhongzhen's entitlement to a separate rate; and (8) Zhongzhen rebutted the presumption of state control historically used by Commerce to evaluate separate rate eligibility by providing extensive information evidencing the complete absence of state

ownership or control, let alone control over export activities, thereby requiring that Commerce affirmatively prove state control before denying the separate rate, which Commerce did not do.

19. Zhongzhen in its case brief requested that Commerce in the final determination: use Zhongzhen's own reported data to calculate a separate rate rather than apply AFA; not assign the punitive and uncorroborated 280.31% ADD rate to the China-wide entity; and use Zhongzhen's own reported data to assess critical circumstances.

20. Commerce on May 13, 2024, conducted a public hearing in its LTFV investigation of pea protein from China, at which time Plaintiffs presented their arguments.

21. In its *Final Determination*, 89 Fed. Reg. 55,559, published on July 5, 2024, Commerce declined to make any changes to its *Preliminary Determination* with respect to Plaintiffs. Commerce instead denied Plaintiffs a separate rate rather than use Plaintiffs' data to calculate their ADD rate, assigned the 280.31% ADD rate to the China-wide entity (including Plaintiffs), and found critical circumstances for Plaintiffs based on AFA. I&D Memorandum Comments 1, 5-6.

22. The ITC in late July 2024 found that a domestic industry was materially injured by reason of pea protein from China, and also found critical circumstances. This ITC affirmative injury and critical circumstances determination issued in August 2024. *Certain Pea Protein from China*, 89 Fed. Reg. 67,671 (Aug. 21, 2024); *Certain Pea Protein from China,* Inv. Nos. 701-TA-692 & 731-TA-1628 (Final), USITC Pub. 5529 (Aug. 2024). In result, Plaintiffs became subject to ADD at 280.31% for entries of pea protein commencing 90 days before publication of the *Preliminary Determination*.

23. Commerce in August 2024 published the *Orders*, 89 Fed. Reg. 68,390.

## STATEMENT OF CLAIMS

**COUNT ONE (Unlawful Denial of Separate Rate)**

24.     Paragraphs 1 to 23 are adopted and incorporated herein by reference.

25.     Commerce unlawfully denied Plaintiffs a separate rate. The factual record in this LTFV investigation clearly established that Plaintiffs qualified for a separate rate and Commerce's denial constituted an impermissible deviation from agency practice by denying the separate rate based on mere membership of two corporate officials in a local People's Committee and CPPCC. In particular: (1) Commerce did not and could not show Chinese government control of Zhongzhen's export activities; (2) the local People's Congress and CPPCC are not government agencies; (3) members in these organizations do not become government officials; (4) Zhongzhen corporate officials having memberships in the local People's Congress and CPPCC did not provide a basis for separate rate denial, and in fact contradicted longstanding agency practice affirmed by this Court; (5) Zhongzhen has no government ownership whatsoever, its ownership structure precludes a finding of government control, since Commerce practice had required significant government ownership to deny separate rates; (6) Commerce deviated from its decades-long agency practice by narrowly focusing on potential government control through the membership of two officials despite no state ownership, rather than the totality of the record to assess a nexus between the Chinese government and export activities; (7) application of Commerce's four factor *de facto* analysis confirmed that Zhongzhen is entitled to a separate rate; and (8) Zhongzhen rebutted the presumption of state control historically used by Commerce to evaluate separate rate eligibility by providing extensive information evidencing the complete absence of state ownership or control, let alone control over export activities, thereby obligating Commerce to affirmatively prove state control before denying the separate rate, which Commerce did not do.

26. Commerce's denial of Plaintiffs' separate rate is not supported by substantial evidence on the record, is arbitrary and capricious, and is otherwise contrary to law, constituting an impermissible and unexplained deviation from agency practice.

## COUNT TWO (Unlawful Failure to Calculate ADD Rate)

27. Paragraphs 1 to 26 are adopted and incorporated herein by reference.

28. Commerce in assigning Plaintiffs the rate of the PRC-wide entity unlawfully declined to calculate Plaintiffs' ADD rate using the extensive sales, costs, and SV data that Plaintiffs placed on the record. As Plaintiffs demonstrated their eligibility for a separate rate, there was no basis for Commerce to decline using such data for Plaintiffs' rate and instead assign Plaintiffs the highest ADD rate possible using Petitioner information which Petitioner placed on the record at the outset of the LTFV investigation.

29. Should this Court order remand for Commerce to calculate an ADD rate for Plaintiffs, all rights are reserved with respect to arguments concerning the appropriate methodology and SV data for use in such calculations. Plaintiffs were deprived of the right to pursue these issues administratively because Commerce preliminarily and erroneously treated Plaintiffs as part of the China-wide entity, and then finalized that determination.

30. Commerce's failure to calculate an ADD rate for Plaintiffs using data on the record is not supported by substantial evidence on the record, is arbitrary and capricious, and is otherwise contrary to law, constituting an impermissible deviation from agency practice.

## COUNT THREE (Unlawful Assignment of China-wide ADD rate)

31. Paragraphs 1 to 30 are adopted and incorporated herein by reference.

32. Commerce unlawfully assigned a punitive and uncorroborated 280.31% ADD rate

to the China-wide entity through application of AFA. There was no basis in law to apply such an adverse inference, as Zhongzhen fully cooperated in this investigation and Commerce did not solicit information from the Chinese government. The ADD rate for Zhongzhen, even if wrongly considered part of the China-wide entity, should have been based on the extensive cost and sales data timely provided by Zhongzhen, as there was never any basis to question such data.

33. Commerce's assignment to Plaintiffs of the 280.31% China-wide ADD rate is not supported by substantial evidence on the record, is arbitrary and capricious, and is otherwise contrary to law.

### COUNT FOUR (Unlawful Determination of Critical Circumstances)

34. Paragraphs 1 to 33 are adopted and incorporated herein by reference.

35. Commerce unlawfully made a critical circumstances determination for Plaintiffs by finding that the China-wide entity was uncooperative and applying AFA to find that there are massive imports for the China-wide entity. Commerce committed legal error by declining to consider the actual quantity and value data submitted by Plaintiffs in the critical circumstances determination.

36. Commerce's affirmative critical circumstances determination for Plaintiffs is not supported by substantial evidence on the record, is arbitrary and capricious, and is otherwise contrary to law.

### COUNT FIVE (Unlawful Implementation of Separate Rate Practice)

37. Paragraphs 1 to 36 are adopted and incorporated herein by reference.

38. This Court has invalidated Commerce's presumption of state control that has historically been used to evaluate separate rate eligibility, in a case now on appeal before the U.S. Federal Circuit for the Court of Appeals. *Jilin Forest Industry Jinquiao Flooring Group Co. v. Unted*

*States*, 617 F. Supp. 3d 1343, 1368-69 (CIT 2023), Fed. Cir. Case No. 23-2245. This Court being affirmed on appeal would represent a fundamental change in law invalidating the approach that Commerce employs in its separate rate analysis.

39.     To the extent that this Court is affirmed in *Jilin Forest Industry Jinquiao Flooring Group Co.,* Commerce implemented an unlawful separate rate practice when it required Plaintiffs to rebut the presumption of state control. Although Plaintiffs in fact rebutted this presumption, they reserve all rights to challenge Commerce's use of that presumption based on new precedent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

(a)   hold that Commerce's *Final Determination* is unsupported by substantial evidence and otherwise not in accordance with law;

(b)   remand the *Final Determination* with instructions for Commerce to issue a new determination that is consistent with this Court's decision, including the assignment of a separate rate to Plaintiffs; and

(c)   provide such other and further relief as the Court deems just and proper.

Respectfully submitted,

GRUNFELD, DESIDERIO, LEBOWITZ
SILVERMAN & KLESTADT LLP

*/s/ Jordan C. Kahn*
Jordan C. Kahn
Ned H. Marshak
Andrew T. Schutz

*Counsel to Plaintiffs*
*Yantai Oriental Protein Tech Co., Ltd.,*
*Yantai Zhongzhen Trading Co., Ltd.,*
*Jiujiang Tiantai Food Co., Ltd., and Yantai*
*Yiyuan Bioengineering Co., Ltd.*

Dated: October 25, 2024

# CERTIFICATE OF SERVICE

I certify that copies of the Complaint filed on October 25, 2024, in case number 24-00181 were served by certified mail, return receipt requested, on October 25, 2024 upon each of the interested parties listed below.

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
**U.S. Department of Justice**
Room 346
26 Federal Plaza
New York, New York 10278

Director, Civil Division
Commercial Litigation Branch
**U.S. Department of Justice**
1100 L Street, NW
Washington, DC 20530

General Counsel
**U.S. Department of Commerce**
14th Street & Constitution Avenue, NW
Washington, DC 20230

Jeanne E. Davidson, Esq.
Civil Division
Commercial Litigation Branch
**U.S. Department of Justice**
1100 L Street, NW
Washington, DC 20530

John D. McInerney, Esq.
Office of the Chief Counsel for
Import Administration
**U.S. Department of Commerce**
14th Street & Pennsylvania Ave., NW
Washington, DC 20230

Stephen J. Orava, Esq.
**King & Spalding LLP**
1700 Pennsylvania Avenue, NW
Washington, DC 20006

Jeffrey S. Grimson, Esq.
**Mowry & Grimson PLLC**
5335 Wisconsin Avenue, NW
Suite 810
Washington, DC 20015

David Craven, Esq.
**Craven Trade Law LLC**
3744 N. Ashland Avenue
Chicago, IL 60613

Matthew J. McConkey, Esq.
**Mayer Brown LLP**
1999 K Street, NW
Washington, DC 20006

Stephanie Hartmann, Esq.
**Wilmer Cutler Pickering Hale & Dorr LLP**
2100 Pennsylvania Avenue, NW
Washington, DC 20037

Daisy Wang
**Shanghai Freemen LifeScience Co., Ltd.**
2500 Xiupu Road
Building 19
Pudong Shanghai, 201315 China

*/s/ Jordan C. Kahn*
GRUNFELD, DESIDERIO, LEBOWITZ
SILVERMAN & KLESTADT LLP

*Counsel for Plaintiffs*