## UNITED STATES COURT OF INTERNATIONAL TRADE
### Before Hon. Claire R. Kelly, Judge

| | |
|---|---|
| YANTAI ORIENTAL PROTEIN TECH CO., LTD. ET AL., | Consolidated Court No. 24-00181 |
| Plaintiffs, | |
| and | |
| KTL PHARMACEUTICAL, CO., LIMITED ET AL., | |
| Plaintiff-Intervenors, | |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| and | |
| PURIS PROTEINS, LLC D/B/A PURIS, | |
| Defendant-Intervenor. | |

**MEMORANDUM OF LAW IN SUPPORT OF
THE RULE 56.2 MOTION OF CONSOLIDATED PLAINTIFFS
ZHAOYUAN JUNBANG TRADING CO., LTD., LINYI YUWANG
VEGETABLE PROTEIN CO., LTD., SHANDONG YUWANG
ECOLOGICAL FOOD INDUSTRY CO., LTD., FENCHEM BIOTEK LTD,
JIANYUAN INTERNATIONAL CO., LTD., YOSIN BIOTECHNOLOGY
(YANTAI) CO., LTD., AND YOSIN IMPORT AND EXPORT (YANTAI)
CO., LTD FOR JUDGMENT UPON THE AGENCY RECORD**

David J. Craven, Esq.
CRAVEN TRADE LAW LLC
3744 N Ashland Avenue
Chicago, Illinois 60613
Tel. 773-709-8506
David.craven@tradelaw.com
  Counsel for Consolidated Plaintiffs Zhaoyuan
  Junbang Trading Co., Ltd., Linyi Yuwang
  Vegetable Protein Co., Ltd., Shandong Yuwang
  Ecological Food Industry Co., Ltd., Fenchem
  Biotek Ltd, Jianyuan International Co., Ltd.,
  Yosin Biotechnology (Yantai) Co., Ltd., And
  Yosin Import and Export (Yantai) Co., Ltd

Dated: May 13, 2025

## UNITED STATES COURT OF INTERNATIONAL TRADE
### Before Hon. Claire R. Kelly, Judge

| | |
|---|---|
| YANTAI ORIENTAL PROTEIN TECH CO., LTD. ET AL., | |
| Plaintiffs, | |
| and | |
| KTL PHARMACEUTICAL, CO., LIMITED ET AL., | |
| Plaintiff-Intervenors, | |
| v. | Cons. Court No. 24-00181 |
| UNITED STATES, | |
| Defendant, | |
| and | |
| PURIS PROTEINS, LLC D/B/A PURIS, | |
| Defendant-Intervenor. | |

**MEMORANDUM OF LAW IN SUPPORT OF
THE RULE 56.2 MOTION OF CONSOLIDATED PLAINTIFFS
ZHAOYUAN JUNBANG TRADING CO., LTD., LINYI YUWANG
VEGETABLE PROTEIN CO., LTD., SHANDONG YUWANG
ECOLOGICAL FOOD INDUSTRY CO., LTD., FENCHEM BIOTEK LTD,
JIANYUAN INTERNATIONAL CO., LTD., YOSIN BIOTECHNOLOGY
(YANTAI) CO., LTD., AND YOSIN IMPORT AND EXPORT (YANTAI)
CO., LTD FOR JUDGMENT UPON THE AGENCY RECORD**

# Table of Contents

Table of Contents ................................................................................i

Table of Authorities ........................................................................ ii

   **I.**   **INTRODUCTION** .......................................................................1

  **II.**   **STATEMENT PURSUANT TO RULE 56.2(c)** ...........................2

      **A.** **Administrative Determination Under Review** ....................2

 **III.**   **ISSUES OF LAW** ....................................................................2

 **IV.**   **SUMMARY OF ARGUMENTS** ..............................................3

  **V.**   **STATEMENT OF FACTS** ......................................................4

 **VI.**   **STANDARD OF REVIEW** ......................................................5

 **VII.**   **ARGUMENT** ...........................................................................7

     **A. Commerce's Finding of De Facto State Control is Unsupported** ...........7

        *1. Ownership and Control* ..................................................7

        *2. The Chinese Communist Party is not embedded within Shaungta Foods* ..................................................9

        *3. Yang Jin Min's Roles with Junxing Center do not make him a government entity* .....................................13

     **B. The Department Should have Verified the Information Submitted by Plaintiff** ....................................16

     **C. The Public Listing on the Stock Exchange is Critical** ...........16

     D. **The Department Should have Calculated a Rate for the SRA Respondents based on Data of Respondents** ........................17

 **VIII.**   **CONCLUSION** .....................................................................17

# Table of Authorities

**Judicial:**

*Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556 (Fed. Cir. 1984) ...................6

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 95 S. Ct. 438, 42 L. Ed. 2d 447 (1974)........................................................................7

*Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367 (Fed. Cir. 2012)........................................................................................7

*Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197 (1938) .........................5

*Diversified Products Corp. v. United States*, 6 CIT 155 (1983) ..............................6

*Gerald Metals, Inc. v. United States*, 132 F.3d 716 (Fed. Cir. 1997).....................6

*Jiangsu Jiasheng Photovoltaic Technology Co., Ltd. v. United States*, 28 F.Supp.3d 1317 (Ct. Int'l Trade 2014) ................................................... 10-11

*Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024)* ................................5

*Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301  (Fed. Cir. 2009)...................6

*Novosteel SA v. United States,* 284 F. 3d 1261 (Fed. Cir. 2002)............................6

*SKF USA, Inc. v. United States.* 254 F.3d 1022 (Fed. Cir. 2001) ...........................6

*Tung Mung Dev. Co., v. United States*, 354 F.3d 1371 (Fed. Cir. 2004) ................6

*Universal Camera Corp. v. NLRB*, 340 U.S. 474  (1951) ....................................5,6

*USX Corp. v. United States*, 11 CIT 82, 655 F. Supp. 487 (1987)...........................6


**Statutory:**

19 U.S.C. § 1516a (a)(2)(B)(iii)................................................................................2

 19 U.S.C. §1516a(b) .................................................................................................5

 19 U.S.C. §1673d(c)(5)..............................................................................................5


**Administrative:**

*Antidumping Duty Investigation of Lightweight Thermal Paper from the People's Republic of China: Final Determination of Sales at Less Than Fair Value* 73 Fed. Reg. 57329 (Oct. 2, 2008) .......................................9

*Certain Vertical Shaft Engines Between 99cc and Up to 225cc, and Parts Thereof, From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part*, 86 Fed. Reg. 14,077 (March 12, 2021)..........................................................11,12

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Final Determination of Sales at Less Than Fair Value, and Affirmative Final Determination of Critical Circumstances, in Part*, 77 Fed. Reg. 63,791 (Oct. 17, 2012) ................................................................... *10*

*Small Diameter Graphite Electrodes from the People's Republic of China; Final Results of Antidumping Duty Administrative Review; 2014-2015*, 81 Fed. Reg. 64,474 (Sep. 2, 2016) ...................................................... 12

## I.  <u>INTRODUCTION</u>

This is an appeal from the final results of the Antidumping Duty Investigation of Pea Protein from China.  Consolidated Plaintiff Zhaoyuan Junbang Trading Co., Ltd ("Junbang") was a mandatory respondent in the investigation, and Consolidated Plaintiffs Linyi Yuwang Vegetable Protein Co., Ltd., Shandong Yuwang Ecological Food Industry Co., Ltd., Fenchem Biotek Ltd,  Jianyuan International Co., Ltd., Yosin Biotechnology (Yantai) Co., Ltd., and Yosin Import and Export (Yantai) Co., Ltd were separate rate applicants.  Junbang was a party to the proceeding, having filed numerous questionnaire responses and comments, as well as a case brief.  Consolidated Plaintiffs Linyi Yuwang Vegetable Protein Co., Ltd., Shandong Yuwang Ecological Food Industry Co., Ltd., Fenchem Biotek Ltd, Jianyuan International Co., Ltd., Yosin Biotechnology (Yantai) Co., Ltd., and Yosin Import and Export (Yantai) Co., Ltd were parties to the proceeding having filed separate rate applications, otherwise actively participated and filed a case brief.

The Consolidated Plaintiffs assert the following errors in the Commerce Department's ("Commerce" or "Department") final determination:

- The Department's Determination to refuse to grant consolidated plaintiff Zhaoyuan Junbang Trading Co., Ltd ("Junbang") separate rate status is unsupported by facts or law.  There is no credible evidence of record demonstrating that the local government exercises control and influence over Junbang's export activities and general operations.
- Consolidated Plaintiff Junbang is a 100% owned subsidiary of Shuangta Food.  Shuangta Food is a listed company on the stock exchange.  A 100% owned subsidiary of a publicly traded company is, per se, not subject to local government control and is entitled to a separate rate.
- The rate calculated for the non-selected companies that qualified for a separate rate is not appropriate.   As both mandatory respondents were found not be eligible for a separate rate, the rate ultimately assigned to the non-selected separate rate companies was adverse and does not reasonably reflect their sales practices.  Where, as here, the mandatory respondents were fully cooperative, it is not appropriate to based the rate on adverse facts or assign a rate which was calculated solely on adverse facts.

## II.  STATEMENT PURSUANT TO RULE 56.2(c)

### A. Administrative Determination Under Review

This action is brought pursuant to 19 U.S.C. § 1516a (a)(2)(B)(iii) to contest Commerce's  final determination and Antidumping duty order  in *Pea Protein from the People's Republic of China*,  published as *Certain Pea Protein From the People's Republic of China: Antidumping and Countervailing Duty Orders* at 89 Fed. Reg. 68,390 (P.R. 391[1]) and Issues and Decision Memorandum ("IDM") accompanying the Department's Final Determination (P.R. 386).   In the Final Results, Commerce placed Jungbang in the "china-wide" entity category with a rate of 280.31%.   The other plaintiffs were granted separate rate status and assigned a combination rate of 122.19.

## III.  ISSUES OF LAW

The Plaintiffs present the following issues.  Commerce's determination was not based on substantial evidence on the record, and was arbitrary and capricious, an abuse of discretion, and not otherwise in accordance with law.  The issues are:

- Whether the Refusal to Grant Consolidated Plaintiff  Zhaoyuan Junbang Trading Co., Ltd ("Junbang") separate rate status was arbitrary and capricious and not based on substantial evidence of record.

The Department improperly found that Junbang was controlled by the government of China and thus not entitled to separate rate status.  Such decision was both arbitrary and capricious and was also contrary to the facts of record.  As a result of this, the Department applied to Junbang the China-Wide rate which rate, in turn, is based on total adverse facts.

---

[1] This brief uses the following abbreviations: **P.R.** = Public Record; **C.R.** = confidential record; **AFA** = adverse facts available;

- Whether the Department Failed to Give due Weight to Public Trading

The Department to give proper weight to the fact that Shuangta Foods, the owner of Junbang, is a publicly traded company.   A publicly traded company is, by its very nature, controlled by its public shareholders and thus cannot be controlled by the Government.   Consolidated Plaintiff Junbang is a 100% owned subsidiary of Shuangta Food.  Shuangta Food is a listed company on the stock exchange.  A 100% owned subsidiary of a publicly traded company is, per se, not subject to local government control and is entitled to a separate rate.

- Whether the Department Improperly Calculated the Separate Rate

The Department's calculation of the separate rate the rate calculated for the non-selected companies that qualified for a separate rate is not appropriate.   The rate ultimately assigned to the non-selected separate rate companies does not reasonably reflect their sales practices.


## IV.    SUMMARY OF ARGUMENTS

The Department erred when it found that Zhaoyuan Junbang Trading Co., Ltd, through its parent company Shuangta Foods was subject to state control.  This was based on a number of errors of law and perception of facts.

- Shuangta Foods, the parent of Junbang, was majority owned by private individuals and was not majority owned by the Government of China nor otherwise controlled by the Government of China.

- The Chinese Communist Party is not embedded within Shuangta Foods. Any references to the operating documents of Shuangta Foods to the Communist Party are standard boiler plate.   The actual operations of the company do not reflect any control by the Chinese Communist Party.

- The fact that an individual may work for multiple entities, one of which is controlled by the Government, does not mean that all entities are controlled by the Government.

- The Department should have verified the responses of Shuangta and Junbang to confirm the assertions that was no evidence of state control.

- The listing of the stock of Shuangta on a public stock exchange necessarily eliminates any claim of state control.

- The Department should have calculated a rate for the SRA respondents based on the data of respondents.

## V.    <u>STATEMENT OF FACTS</u>

The antidumping duty investigation on **Pea Protein from the People's Republic of China** was initiated on August 7, 2023 (Certain Pea Protein from the People's Republic of China: Initiation of Antidumping Duty Investigation, 88 Fed. Reg. 52124 (August 7, 2023) (P.R. 35) as a result of the petition filed by the domestic industry on July 12, 2023.   (P.R. 1 at 1)  In this investigation, Commerce issued its preliminary results as *Certain Pea Protein from the People's Republic of China: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Affirmative Determination of Critical Circumstances, Postponement of Final Determination, and Extension of Provisional Measures.* 89 Fed. Reg. 10038 (February 13, 2024) P.R. 358, accompanied by Commerce's Issues and Decisions memo entitled *Decision Memo from USDOC To Das for P&N Performing As A/S Pertaining to Interested Parties Prelim Issues and Decision Memo* (February 8, 2024) ("PDM"), (P.R. 347)

Commerce issued its final results as *Certain Pea Protein From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Critical Circumstances Determination,* 89 Fed. Reg. 55559 (July 5, 2024)  ("Final. Results")(P.R. 385) , accompanied by Commerce's

June 28, 2024 Decision Memo from USDOC To Das for Policy and Negotiations Pertaining to Interested Parties Final Issues and Decision Memo ("FDM"), (PR 386). On August 24, 2024 Commerce issued the Antidumping duty order. It was published as *Certain Pea Protein from the People's Republic of China: Antidumping and Countervailing Duty Orders*, 89 Fed. Reg. 68,390 (August 26, 2025)(P.R. 391).

## VI.    STANDARD OF REVIEW

The Court will hold unlawful Commerce determinations that are unsupported by substantial evidence on the record or are not otherwise in accordance with law. 19 U.S.C. §1516a(b). To determine whether Commerce's interpretation and application of 19 U.S.C. §1673d(c)(5) is "in accordance with law," the courts review the statute to determine whether Congress has directly spoken to the precise question at issue.

If the statute is silent or ambiguous with respect to the specific issue, the Supreme Court has held that it is the responsibility of the Federal Courts to determine the meaning of the law. *Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024).* *Loper* stated in relevant part "*Chevron* is overruled. Courts must exercise their dependent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright* 144 S.Ct. 2244 at 2273.

Furthermore, once the statute has been properly interpreted by the Court, the question is then whether the decision is supported by substantial evidence. Substantial evidence is well defined by Court precedent. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951), *quoting Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197, 229 (1938). Furthermore, "substantial evidence" must be measured by the record as a whole, "including whatever fairly detracts from the

substantiality of the evidence." *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (quotations omitted). Thus, "it is appropriate to set aside the ITA's decision when the court 'cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to {that} view.'" *Diversified Products Corp. v. United States*, 6 CIT 155, 161 (1983) *quoting Universal Camera*, 340 U.S. at 488.

Moreover, Commerce's determination cannot be based on "isolated tidbits of data which suggest a result contrary to the clear weight of the evidence." *USX Corp. v. United States*, 11 CIT 82, 84, 655 F. Supp. 487, 489 (1987). The substantial evidence standard requires more than mere assertion of 'evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (citation omitted).

Moreover, when substantial evidence is not utilized, such action is tantamount to the use of speculation in making a determination. *See Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1327 (Fed. Cir. 2009) ("It is well established that speculation does not constitute 'substantial evidence.'" (quoting *Novosteel SA v. United States,* 284 F. 3d 1261, 1276 (Fed. Cir. 2002) (internal quotation marks omitted)).

It is axiomatic that Commerce may not exert its authority in an arbitrary or capricious manner. *See, e.g., Tung Mung Dev. Co., v. United States*, 354 F.3d 1371, 1378 (Fed. Cir. 2004). Commerce's decision will be set aside if it is arbitrary and capricious. *See, e.g., SKF USA, Inc. v. United States.* 254 F.3d 1022, 1028 (Fed. Cir. 2001). "{A} reviewing court must apply both standards {substantial evidence, and arbitrary and capricious or contrary to law}, while  "an agency's finding may be

supported by substantial evidence," yet "nonetheless reflect arbitrary and capricious action." *Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367, 1377 (Fed. Cir. 2012) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 284, 95 S. Ct. 438, 42 L. Ed. 2d 447 (1974).

## VII.  <u>ARGUMENT:</u>

### A. *Commerce's Finding of De Facto State Control is Unsupported*

The Department found that the parent company of Junbang, the exporter, Shuangta Food, was subject to state control notwithstanding that the entity that exerted the purported government control did not constitute the majority ownership. This finding was made on the following points, each of which is addressed below:

- Shaungata Food's ownership demonstrates that Junxing Center is the largest, and thus controlling owner.  Although it is not the majority owner, controls through its ability to nominate to the board of directors through a single individual. (FDM at 23) (P.R. 386 at 23.)

- Local governments operate under the leadership of the Chinese Communist Party and the Chinese Communist Party is embedded within Shuangta Food. (FDM at 23) (P.R. 386 at 23.)

- A single individual (Yang Jun Min) effectively exercises majority control of the company. (FDM at 25) (P.R. 386 at 25.) Yang Jun Min has significant roles with Junxing Center, Shuangta Foods, and Junbang and thus is a government entity. (FDM at 27) (P.R. 386 at 25.)

The facts are clear none of these conclusions are grounded in the fact and law and do not support a finding of state control.

#### 1. *Ownership and Control*

The issues as to control all ultimately turn, in part, on ownership and control. In the final results, the Department determined that the local government exercises control and influence over Junbang's export activities and general operations,

including its ability to set export prices, to negotiate and sign contracts, to select management, and to make decisions regarding dispositions of profits and financing of losses. The Department finding is based on the following logical chain:

- Junbang is a 100% subsidiary of the listed company Shuangta Food;

- Junxing Center, a collectively owned by the People's Government of Jinling Town, Zhaoyuan City, owns 34.31% of the total shares of Shuangta Food;

- Shuangta Food's own financial statements affirm the government's control of Shuangta Food through Junxing Center, reporting that Junxing Center is the "ultimate controller".

Such logical chain, however, is fallacious, misstates certain basic facts and makes unsupported assumptions  While the largest single shareholder is purportedly a collectively owned entity, such entity does not own a controlling interest in Shuangta and has no ability to control the company.  In fact, as shown in the responses, Junxing Center only after adjustment for sales of ownership owned about 25% of the total shares of a listed company.  (Exhibit A-13 to Section A response at note 4) (C.R. 82 at 40)

During the POI the majority of the shares are either owned by **individual or private investors** or are publicly traded (Exhibit A-13 to Section A response, (C.R. 82 at 38-40).  The single largest individual shareholder, Yang Jun Min owns 12.25% of total shares and **more than 50% of shares** are traded on the stock market. Critically, the analysis also ignores the fact that Junxing Center owns far less than a controlling amount of shares.  The facts show that Junxing Center owns about 25% of the total shares of a listed company.  Even if Yan Jun Min was a state agent, which he is not, he and Junxing Center together control slightly more than 1/3rd of the shares, and less than 50%. (Exhibit A-13 to Section A response at note 4) (C.R. 82 at 40)

Furthermore, the Department cannot point to any explanation as to how the Government of China does assert control.   As discussed below, this is highly relevant.

Plaintiff submits that the separate rate analysis is not based on a series of "brightline" tests, but rather should take into account a broad range of facts.   In this case, the Department has discounted, if not totally ignored the fact that Shuangta is publicly traded – the diametric opposite of State Control, or even Private Control. Publicly traded stock is not a non-market concept, it is inherently a free-market concept.  Where, as here, more than 50% of the corporation is publicly traded stock, the controller of the corporation is the investor.  This factor is critical, and where is here, there is no evidence of actual or potential state control, and the stock is publicly traded, a finding of state control, either *de facto* or *de jure* is simply unsupportable.

### 2. The Chinese Communist Party is not embedded within Shaungta Foods

In the Final Results the Department found that the Communist Party was "embedded" in Shaungta Foods.  This was based, in large part, on a mere reference to the CPC in the articles of incorporation.   This is not sufficient to establish control and goes against substantial precedent.  Even though the Articles of Association stated the rights of the CPC, Junbang submits that these articles are standard ones as imposed by the local administration.

There are recent administrative determinations (and court rulings upholding those that were challenged in Court) that hold that mere formalities are insufficient to result in control.

The first of these cases is that of Lightweight Thermal Paper (*Antidumping Duty Investigation of Lightweight Thermal Paper From the People's Republic of China: Final Determination of Sales at Less Than Fair Value* ("*Lightweight Thermal*

*Paper*"), 73 Fed. Reg. 57329 (Oct. 2, 2008)) this administrative determination establishes that the mere fact that an individual has a position with the Communist Party does not establish that he acts on behalf of the Chinese Government on a day-to-day basis.   See Lightweight Thermal Paper, Issues and Decision Memorandum at Comment 7.

This establishes that a position with the Communist Party does not establish that he acts on behalf of the Government on a day-to-day basis.

The second of these is Crystalline Silicon Photovoltaic Cells (*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Final Determination of Sales at Less Than Fair Value, and Affirmative Final Determination of Critical Circumstances, in Part ("Crystalline Silicon Photovoltaic Cells"), 77 Fed. Reg. 63,791 (Oct. 17, 2012).*

This case upheld the principle that participation in the local bodies of the CPC, NPC and CPPCC is not dispositive.   This was upheld by the Court of International Trade which stated:

> Beyond emphasizing the legal and practical possibility that the company officials who are also in some capacity government officials could have influenced these companies' export sales negotiations during the POI,   SolarWorld has not pointed to any specific evidence that, in influencing the companies' operations pursuant to their **duties as company officials (including through the selection of management and preparation of profit distribution plans), these persons were directing the companies' export pricing decisions based on the will of the PRC government.** Commerce concluded that, on the evidence presented, it was more likely that these companies had autonomy over their own export price negotiations, and that grouping them within the countrywide entity would be accordingly inappropriate. Commerce credited evidence, which was never persuasively contradicted, that the companies themselves negotiate and set their U.S. export prices, notwithstanding the dual roles played by some company officials as both company managers and members of

government, and the agency concluded that these companies negotiated and set their U.S. export prices during the POI separately, both from each other and from any centralized countrywide mind.

*Jiangsu Jiasheng Photovoltaic Technology Co., Ltd. v. United States*, 28 F.Supp.3d 1317  at 1350-1351(Ct. Int'l Trade 2014)(Emphasis Added)(Citations Omitted)

Finally, the administrative determination in Certain Vertical Shaft Engines (*Certain Vertical Shaft Engines Between 99cc and Up to 225cc, and Parts Thereof, From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part* ("*Certain Vertical Shaft Engines*"), 86 Fed. Reg. 14,077 (March 12, 2021)) further expanded upon these points.  The Department cogently explained that

> Moreover, the record does not establish how the CCP and GOC are able to exert control over CPPCC members merely through their participation in the organization…. As stated above, and consistent with our separate rates practice, we have examined the level of government ownership in Loncin, as well as the Chinese government's capacity to influence and control Loncin through Mr. Tu's and the company's affiliations and extracurricular memberships. However, none of these factors results in Loncin being controlled by the government. This analysis is consistent with our continued evaluation of our practice with regards to analyzing separate rates and NME companies' *de facto* independence from government control.557 The petitioner has not provided any further precedent, case law, or relevant statutory or regulatory provisions, to justify its arguments that Loncin is undeserving of a separate rate….
>
> Furthermore, the petitioner's arguments do not explain how the Chinese government is able to control Loncin through its AoAs, CCP Committee, joint ventures, or Mr. Tu's positions in political organizations.

See also  *Small Diameter Graphite Electrodes from the People's Republic of China; Final Results of Antidumping Duty Administrative Review* ("*Small Diameter Graphite Electrodes*"); *2014-2015*, 81 Fed. Reg. 64,474 (Sep. 2, 2016)

Applying this to the facts at bar compel the decision of no control.  There is no evidence, nor no explanation as to how the Government of China is able to actually control Shaungta Food through a "standard" clause in an article of association.  Nor is their any evidence showing how the Government of China controls the individual shareholder who also happens to have a position with the local community.   Rather, the uncontroverted factual evidence of record shows that the exporter has its own autonomy to negotiate and set prices and export terms.

Quite to the contrary, all of the evidence, as opposed to surmises by the Department, is that the CPC does not control the exporter.

-   CPC organization does not appear in Shuangta's shareholder structure (see Exhibit A-13 to Section A) (C.R. 82 at 38-40).;

-   The Shuangta internal documentation on the record does not contain any other mention of the CPC organization (see Exhibit A-13 to Section A) (C.R. 82 at 35-37) This exhibit shows that as numerous listed companies in China, Shuangta established internal organs such as the Board of directors, Board of supervisors, Nominating Committee, Salary Review Committee and Auditing Committee, etc.

To re-emphasize, in *Vertical Shaft Engines* the Department made the following determination:

> However, Loncin reported that it did not conduct CCP activities in 2019 and the CCP is not involved in the operations of Loncin. Other than in Article 1.2, Loncin's AoAs do not mention the CCP organization. In fact, the Loncin internal documentation submitted to the record does not contain any other mention of the CCP organization. Further, the CCP organization does not appear in Loncin's shareholder structure...(see pages 65-75, Comment 10: Whether to Grant Loncin Motor Co., Ltd. a Separate Rate).

This case is directly on point.   In the matter at bar, the sole mention of the CPC is the articles of incorporation – just like the situation in Vertical Shaft Engines. The CCP organization does not appear in the shareholder structure of the Corporation – just like the situation in Vertical Shaft Engines.   The only meaningful distinction is that any purported involvement of the CCP is more remote in this case – being present in the company that owns the exporter.  In addition, the role of the CCP is merely limited to the publicity and political work as well as the protection of employee's interests. (see Exhibit SA-1 at Article 95-2 of the Articles of Association)(C.R. 148 at 89).    This article does not include an references to price or price negotiation or control over exports and makes it clear that the stated matters involve the vital interests of employees), This makes it clear that the CCP is not involved in the export activity and business operations of Shuangta and Junbang.

### 3. *Yang Jin Min's Roles with Junxing Center do not make him a government entity*

In the final determination the Department found that Yang Jin Min was an agent of the government.  This appears to be based on the fact that he served roles with Shuangta, Junbang and the Junxing Center.    The fact that he acts in roles with all three of these entities does not mean that the Government controls all of these enties because of his roles with all three.   As discussed in Section VII.A.1 above, a mere formality is not sufficient to find control.  Rather, the actual functions, and critically the ability to actually control, are critical.

With respect to Shuangta (and its wholly owned entity Junbang) Yang Jin Min is the founder and primary person who directs the company.  He, and not the Government of China nor any of its entities, are responsible for making the decisions. (Section A response at 31) (C.R. 80 at 39)

To the extent that any individual or entity "controls" the company it is Yang

Jin Min.  He does this as an individual in his individual capacity.

Furthermore, the Department has mis-interpreted the term "registered" officers with the Government. The Department referred to Article 15 of the Articles of association of Junxing Center, which states the following: The legal representative of the enterprise shall be nominated by the factory director's office meeting, passed by the workers' representative meeting, and shall come into force after registration by the registration authority. Here the word "registration" does not mean "being approved", this is just a registration formality, similar to the standard corporate filings in the U.S. where Corporations "report" or "register" their officers with the relevant state authority.   The language simply states "registered".   The Government does not appoint, approve or authorize officers like Yang Jun Min.    This is done by the factory directors.   Rather, just as is common in the United States, the names are provided to the Government only for purposes of registration. This registration process is undertaken by all companies in China.

Secondly, while Yang Jun Min has a working relationship with an agricultural center controlled by a town, does not make him a state controlled agent. The Department has found in multiple cases, that membership in organizations such as local legislative bodies, such as that controlling the town of Jinling do not have authority to set government policy.   In this matter, he is the factory manager, meaning that he operates the factory. (Sup. Qaire Resp at 4-5) (C.R. 148 at 11-12). There is no evidence how the existence of this entity resulted in a lack of autonomy for Shuangta and Junbang to select management, set prices, negotiate agreements and dispose of profits.

Quite to the contrary, the record establishes that Shuangta acted independently.

Shaungta provided copies of documents regarding its sales to the US demonstrating its control over the process. (Section A response at Exhibit A-1 and

A-2) (C.R. 81 at 6-20.)

Shuangta certified in its Section A response an absence of De Jure control (Section A Response at 11). (C.R. 80 at 19) In support of this, Shuangta also provided a copy of its registrations in Exhibit A-3. (Section A response at Exhibit A-3) (C.R. 81 at 21-23)

Shuangta certified in its Section A response that its export prices were not set by, subject to the approval of, or controlled by any government entity. (Section A Response at 22) (C.R. 80 at 30)

Shaungta certified that it had independent authority to negotiate and sign export contracts and conducted independent price negotiations. (Section A Response at 22) (C.R. 80 at 30) In support of this Shuangta provided a copy of its e-mail correspondence demonstrating the negotiation of prices and export terms with its customers and an affidavit in support of the e-mails. (See Exhibit A-10a) (C.R. 82 at 24-29.)

Shaungta certified that it had autonomy from all levels of government and from government entities in making decisions with respect to the selection of management. (Section A Response at 24) (C.R. 80 at 32) In support of this Shuangta provided a copy of the appointment letters showing the lack of control of the government in the selection of management. (See Exhibit A-11) (C.R. 82 at 30-34.)

Shaungta certifies that it retains the proceeds of its export sales and makes independent decisions about the disposition of profits and losses. (Section A Response at 26) (C.R. 80 at 34) Shuangta cited its income statements showing where the profits and losses would be recorded.

Shaungta provided details as to the share transactions showing the ultimately ownership of the company with majority ownership by private entities. (See Exhibit A-6b to the Section A Response) (C.R. 81 at 50-76.)

Thirdly, this analysis ignores the fact that Shuangta, which is a listed

company, ultimately answers to the owners of the company – the stock holders.   The ultimate control does not rest with the Government of China, and critically, the stockholders, through their control of the shares, have an actual and effective way of controlling the company.

### B. The Department Should have Verified the Information Submitted by Plaintiff

Many of the claims asserted by plaintiff in the underlying administrative matter consisted of a series of factual allegations, certifications and facts.   Such factual allegations, certifications and facts are evidence.    The Department discounted such evidence and did not verify such evidence.   The Department should have confirmed the accuracy of the information submitted by plaintiff through the process of verification.   The Department cannot refuse to give full weight to facts of record and allegations of plaintiff on the basis of non-verification by refusing to conduct such verification.   Such verification would have confirmed the factual allegations by plaintiff as to the absence of state control.   This is particularly important in this matter as much of the determination by the Department is based on unsupported speculation as to control contrary to the certifications, allegations and facts of record.   As the Department frequently states, the purpose of verification is not to receive new information, it is to confirm information that has been submitted.

### C. The Public Listing on the Stock Exchange is Critical

The Department, in its determination, failed to give proper weight to the fact that Shuangta Foods is a publicly traded company.   The concept of a publicly traded company is that of a free market and is contrary to the concept of state-control.   In this case, more than 50% of the corporate ownership is publicly traded and freely available for purchase.   The shareholders, through their rights as shareholders, have the ultimate, and explicit, control over the Corporation including the ultimate

appointment of all of the officers and directors of the Corporation.  As noted in the Articles of Association, all shares have equal rights. (Articles of Association for Shuangta at Article 15)(C.R. 148 at 69).  Further, the Articles of Association provide for shareholder procedures enabling the shareholders to control the company. (Articles of Association for Shuangta at Articles 30 to 92.)  (C.R. 148 at 71 – 88) No rights are reserved for the Government.

In sum, the fact that Shuangta is publicly traded and that the shareholders have the absolute right to direct the operations of the company is clear evidence that the company is not state-controlled where, as here, the only purported state entity controls less than the majority.

### D. The Department Should Have Calculated a Rate for the SRA Respondents based on Data of Respondents

The rate assigned by the Department to the Separate Rate applicants was based on an average of the petition rates.    The petition rates, however, are unrelated to actual transactions, but rather is unchallenged speculation as to potential rates. However, the Department had record before it actual data about cost of production and sales.  It elected not to use the data for those respondents, but this data should have been used for the separate rate applicants as it is the best alternate data.

Furthermore, if the Court should remand this matter to the Department for calculation of a margin for either or both of the mandatory respondents, it should direct to use such recalculated rate or rates as a basis for calculation of the SRA rate.

## VIII.    <u>CONCLUSION</u>

The facts and law are clear.  Zhaoyuan Junbang, through its parent company, is not subject to control by the Government of China.  Rather, it is a publicly traded company controlled by its stockholders.   Accordingly, the denial of a separate rate

for Junbang is not appropriate. This court should remand this matter to the Department of Commerce to calculate a rate for Junbang based on its own data. The Department should also recalculate the rates for those entities found to be eligible for a separate rate.

Respectfully submitted,

/s/ David J. Craven

David J. Craven
Counsel to Zhaoyuan Junbang Trading Co., Ltd., Linyi Yuwang Vegetable Protein Co., Ltd., Shandong Yuwang Ecological Food Industry Co., Ltd., Fenchem Biotek Ltd, Jianyuan International Co., Ltd., Yosin Biotechnology (Yantai) Co., Ltd., And Yosin Import and Export (Yantai) Co., Ltd

Craven Trade Law LLC
3744 N Ashland
Chicago, IL 60613
(773) 245-4010
David.craven@tradelaw.com

Date May 13, 2025