# UNITED STATES COURT OF INTERNATIONAL TRADE
## Before Hon. Claire R. Kelly, Judge

| | |
|---|---|
| YANTAI ORIENTAL PROTEIN TECH CO., LTD. ET AL.,<br><br>    Plaintiffs,<br><br>    and<br><br>ZHAOYUAN JUNBANG TRADING CO., LTD., *et.al.,*<br><br>    Consolidated-Plaintiffs,<br><br>    and<br><br>KTL PHARMACEUTICAL, CO., LIMITED ET AL.,<br><br>    Plaintiff-Intervenors,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>    and<br><br>PURIS PROTEINS, LLC D/B/A PURIS,<br><br>    Defendant-Intervenor. | Consolidated Court No.<br> 24-00181 |

## Reply Brief of Consolidated Plaintiffs Zhaoyuan Junbang Trading Co., Ltd. et. al.

David J. Craven, Esq.
CRAVEN TRADE LAW LLC
3744 N Ashland Avenue
Chicago, Illinois 60613
Tel. 773-709-8506
David.craven@tradelaw.com
  Counsel for Consolidated Plaintiffs Zhaoyuan
  Junbang Trading Co., Ltd. et. al.

Dated: April 22, 2026

# Table of Contents

Table of Contents..................................................................................................i

Table of Authorities ........................................................................................ ii

I.   INTRODUCTION ........................................................................................1

II.  ARGUMENT................................................................................................1

A. The Department's Determination to refuse to grant consolidated plaintiff Zhaoyuan Junbang Trading Co., Ltd ("Junbang") separate rate status is unsupported by facts or law. There is no credible evidence of record demonstrating that the local government exercises control and influence over Junbang's export activities and general operations..................................................................................2

    1. Commerce's Determination that the Chinese Government has the Potential to Exercise Control over Junbang's Export Activities and General Operations is not reasonable.........................................................................2

    a. Ownership................................................................................2

    b. Senior Leadership ..................................................................3

    c. Chinese People's Congress....................................................4

B. The Record as a Whole Supports a Finding of No Control ......................6

    1. Share Transfer After POI.............................................................6

    2. Owners of Less Than 50% Do Not Control the Company .........6

    3. The Evidence is that the Publicly Traded Shares Control the Company ...............................................................................7

    4. The CPC is not Embedded in Shuangta.....................................7

III. CONCLUSION.............................................................................................8

# Table of Authorities

Court

*Jiangsu Jiasheng Photovoltaic Technology Co., Ltd. v. United States*, 28
    F.Supp.3d 1317 (Ct. Int'l Trade 2014) ..........................................................4

Administrative

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into
    Modules, from the People's Republic of China: Final Determination of
    Sales at Less Than Fair Value, and Affirmative Final Determination of
    Critical Circumstances, in Part*, 77 Fed. Reg. 63,791 (Oct. 17, 2012)...........4

*Antidumping Duty Investigation of Lightweight Thermal Paper From the
    People's Republic of China: Final Determination of Sales at Less Than
    Fair Value*, 73 Fed. Reg. 57329 (Oct. 2, 2008)) and the Issues and
    Decision Memorandum .....................................................................................4

*Small Diameter Graphite Electrodes from the People's Republic of China;
    Final Results of Antidumping Duty Administrative Review; 2014-2015*,
    81 Fed. Reg. 64,474 (Sep. 2, 2016) ................................................................5

*Certain Vertical Shaft Engines Between 99cc and Up to 225cc, and Parts
    Thereof, From the People's Republic of China: Final Affirmative
    Determination of Sales at Less Than Fair Value and Final Affirmative
    Determination of Critical Circumstances, in Part*, 86 Fed. Reg. 14,077
    (March 12, 2021) .............................................................................................5

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**Before Hon. Claire R. Kelly, Judge**

| | |
|---|---|
| YANTAI ORIENTAL PROTEIN TECH CO., LTD. ET AL., <br>     Plaintiffs, <br> and <br> ZHAOYUAN JUNBANG TRADING CO., LTD., *et.al.,* <br>     Consolidated-Plaintiffs, <br> and <br> KTL PHARMACEUTICAL, CO., LIMITED ET AL., <br>     Plaintiff-Intervenors, <br> v. <br> UNITED STATES, <br>     Defendant, <br> and <br> PURIS PROTEINS, LLC D/B/A PURIS, <br>     Defendant-Intervenor. | Consolidated Court No. 24-00181 |

**Reply Brief of Consolidated Plaintiffs**
**Zhaoyuan Junbang Trading Co., Ltd., et. al.**

## I.   INTRODUCTION

This is the reply to the responses of the defendant and defendant-intervenor to consolidated plaintiff's motion for Judgment on the Agency Record.  This is not a complex matter and there is one primary issue before the Court – whether Department's Determination to refuse to grant consolidated plaintiff Zhaoyuan Junbang Trading Co., Ltd ("Junbang") separate rate status is unsupported by facts or law.  As will be discussed herein, there is no credible evidence of record demonstrating that the local government exercises control and influence over Junbang's export activities and general operations.

## II.   ARGUMENT:

As a preliminary matter, consolidated plaintiffs continue to rely upon its

primary case brief in this matter.

A. The Department's Determination to refuse to grant consolidated plaintiff Zhaoyuan Junbang Trading Co., Ltd ("Junbang") separate rate status is unsupported by facts or law. There is no credible evidence of record demonstrating that the local government exercises control and influence over Junbang's export activities and general operations.

1. Commerce's Determination that the Chinese Government has the Potential to Exercise Control over Junbang's Export Activities and General Operations is not reasonable.

At pages 24 - 28 of the Defendant's Response to Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record ("Def. Resp.") and on pages 19 to 29 of the Defendant-Intervenor's Response Brief ("DI Resp.") it was argued that the facts supporting a finding that the Chinese Government has to the potential to exercise control over Junbang's export activities and general operations.    This analysis focused on three points:

- Ownership Structure
- Senior Leadership
- Chinese People's Congress

a. Ownership

The argument is that an attenuated structure of ownership means that the Chinese Government has the potential to control Junbang.  (Def. Resp. at 25-26, DI Resp. at 19-20). There is no disagreement that Junbang was solely owned by Shuangta Food. (Def. Resp at 25).  There is also no issue that the government entity owned less than 35%.  (Def. Resp. at 25).  This "plurality" argues that it shows that the People's Government of Jinling Town's has the ability to control the export activities.  This analysis, however, ignores that fact that more than 50% of the shares are owned by small private shareholders who, collectively, have the potential to fully

control the company.  During the POI the majority of the shares are either owned by **individual or private investors** or are publicly traded (Exhibit A-13 to Section A response, (C.R. 82 at 38-40).   The single largest individual shareholder, Yang Jun Min owns 12.25% of total shares and **more than 50% of shares** are traded on the stock market.  Critically, the analysis also ignores the fact that Junxing Center owns far less than a controlling amount of shares.  The facts show that Junxing Center owns less than 35% of a listed company and even if Yan Jun Min was a state agent, which he is not, he and Junxing Center together control less than 50%.  While the minority owners can certainly propose pricing, select management, enter into contracts and distribute profits, the ultimate decision would rest with the majority of the shares.  (See Exhibit A-6b) (C.R. 81 at 67 and 72-73).  The Department's finding that "control" rests with the minority of the ownership is simply unsupportable.

In contrast, the majority of the shares, which represents the ultimate control of the company are publicly traded shares.   Such public trading is the diametric opposite of government control.   Simply put, the ultimate control of the company resides with the control of the parent company which is, in turn, controlled by the public.

### b.  Senior Leadership

The argument is that Yang Jun Min is, somehow an agent of the People's Republic of China due to his connections to Jinling Town and thus "fully controlled" the parent company and can "recommend" at least five of the nine board members. (Def. Resp at 26-28, DI Resp. at 20).   This argument ignores several key points. The first is that if he "fully controlled", he would appoint the board members, rather than "recommend" the board members, the appointment of which would need to be confirmed by the majority of the ownership, which as discussed above, is the public, not the Government.  He does not "fully control" the company.  (See Exhibit A-6b) (C.R. 81 at 72-73)

Secondly, his position with Jinling Town does not make him an "agent" of the Government.  While Yang Jun Min has a working relationship with an agricultural center controlled by a town, does not make him a state controlled agent. The Department has found in multiple cases that membership in organizations such as local legislative bodies, such as that controlling the town of Jinling do not have authority to set government policy. In this matter, he is the factory manager, meaning that he operates the factory. (Sup. Qaire Resp at 4-5) (C.R. 148 at 11-12).  Critically, he is also under the control of the board of directors, and thus indirectly under the control of the public shareholders There is no evidence how the existence of this entity resulted in a lack of autonomy for Shuangta and Junbang to select management, set prices, negotiate agreements and dispose of profits.

### c.  Chinese People's Congress

The argument is that the CPC is embedded within Shaungta Food, the parent company and thus "controls" the Company.  (Def. Resp. at 28 – 29, DI Resp. at 20). In this response, the Defendant reiterated the argument from the final determination that the Articles of Association show control.  This issue was discussed in detail in plaintiff's 56.2 motion which explained that the provisions in question are "standard ones" and are mere formalities are insufficient to result in control.

See generally *Antidumping Duty Investigation of Lightweight Thermal Paper From the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 73 Fed. Reg. 57329 (Oct. 2, 2008)) and the Issues and Decision Memorandum  at Comment 7; *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Final Determination of Sales at Less Than Fair Value, and Affirmative Final Determination of Critical Circumstances, in Part*, 77 Fed. Reg. 63,791 (Oct. 17, 2012); *Jiangsu Jiasheng Photovoltaic Technology Co., Ltd. v. United States*, 28

4

F.Supp.3d 1317  at 1350-1351(Ct. Int'l Trade 2014); *Certain Vertical Shaft Engines Between 99cc and Up to 225cc, and Parts Thereof, From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part*, 86 Fed. Reg. 14,077 (March 12, 2021); *Small Diameter Graphite Electrodes from the People's Republic of China; Final Results of Antidumping Duty Administrative Review*; *2014-2015*, 81 Fed. Reg. 64,474 (Sep. 2, 2016).

Applying this to the facts at bar compel the decision of no control.  There is no evidence, nor any explanation as to how the Government of China is able to actually control Shaungta Food through a "standard" clause in an article of association. There is no evidence showing how the Government of China controls the individual shareholder who also happens to have a position with the local community.   Rather, the uncontroverted factual evidence of record shows that the exporter has its own autonomy to negotiate and set prices and export terms.

All of the evidence, as opposed to surmises by the Department, is that the CPC does not control the exporter.

- CPC organization does not appear in Shuangta's shareholder structure (see Exhibit A-13 to Section A) (C.R. 82 at 38-40);

- The Shuangta internal documentation on the record does not contain any other mention of the CPC organization (see Exhibit A-13 to Section A) (C.R. 82 at 35-37) This exhibit shows that similar to listed companies in China, Shuangta established internal organs such as the Board of directors, Board of supervisors, Nominating Committee, Salary Review Committee and Auditing Committee, etc.

In sum, contrary to the claims of defendant and defendant intervenor, the presence of the CPC is nothing more than a mere formality and does not constitute control.

B.  The Record as a Whole Supports a Finding of No Control

At pages 29 - 32 of the Defendant's Response to Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record ("Def. Resp.") and on pages 22-29 of the Defendant-Intervenor's Response Brief ("DI Resp.") the Defendant suggests that since Plaintiff's analysis focused on each individual point, it did not properly show that the record, as a whole, did not support Plaintiff's arguments.    This argument ignores the fact that if each individual factor does not support control, then all of the factors taken together must necessarily support a finding of non-control.  While each of the claims were addressed above, plaintiff further addresses these as follows:

1.  Share Transfer After POI

At page 30, defendant argues that the further increase of shares was not relevant because the change did not occur until after the POI.  While it is true that the transfer did not occur until after the POI, the fact that such change was in process during the POI is a further indicium that the Government is not controlling the company, as any such transfer would be contrary to the concept of control.

2.  Owners of Less Than 50% Do Not Control the Company

At page 30 defendant argues that while the ownership by purportedly state controlled entities was less than 50% because it had the ability to "nominate" six of the nine board members.  This does not, however, demonstrate control. Quite to the contrary, the purportedly state controlled entities can only nominate, not name, six of the board members and ultimately it is the shareholders that approve the board members and otherwise can direct the operations of the company.  The resolutions showing that the shareholders made this ultimate determination was provided in Exhibit A-6b  (C.R. 81 at 72-73).  It shows that the actual appointment of the board

6

members was made by the shareholders of the company.

### 3. The Evidence is that the Publicly Traded Shares Control the Company

At page 30 defendant claims that there is no evidence that these "unnamed" individuals control or have the potential to control Shuangta Food or its subsidiary. This, however, is contrary to the evidence of record. As clearly shown in the resolutions provided in Exhibit A-6b to the initial Section A response, it is ultimately the vote of the shareholders that controls both the make up the board and the operations of the company. The fact that the public controls the majority of the shares counterbalances the ownership of the minority.

### 4. The CPC is not Embedded in Shuangta

At page 31 defendant claims that the fact that the local administration can impose specific provisions in an articles of association is indicative of government control. However, this is nothing more than a general requirement similar to a business registration requirement in the United States. As discussed above, and is in plaintiff's 56.2 motion and memo in support, the CPC's "embedding" is all form over substance.

III.   CONCLUSION

In conclusion, the Court should reject the arguments presented by defendant and defendant-intervenor in their responses, should find that the arguments presented by plaintiff in its motion for Judgment, and should remand this matter to the Department with instructions that it find a separate rate for plaintiff.

Respectfully submitted,

/s/ David J. Craven

David J. Craven
Counsel to Consolidated Plaintiffs
Zhaoyuan Junbang Trading Co., Ltd.,
et. al.

Craven Trade Law LLC
3744 N Ashland
Chicago, IL 60613
(773) 709-8506
David.craven@tradelaw.com

Date April 22, 2026

8